**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT LONDON**

**CIVIL ACTION NO. 18-115-DLB**

**ROBERT A. HAWKINS,**                                                                    **PETITIONER**

**v.**                              **MEMORANDUM OPINION AND ORDER**

**J.A. BARNHART, Warden,**                                                          **RESPONDENT**

**\*\*\* \*\*\* \*\*\* \*\*\***

Federal inmate Robert A. Hawkins has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. # 1) as well as a supplemental petition (Doc. # 9). Hawkins contends that the enhancement of his federal sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), was improper because none of his prior offenses constituted valid predicates under the ACCA.  *See id.*  The government raises a procedural and substantive argument in response: first, the government counters that Hawkins's arguments are not properly asserted in a § 2241 petition; second, the government contends that the § 2241 petition is without merit in any event.  (Doc. # 13). Hawkins has filed his reply in further support of his petition (Doc. # 15), and this matter is therefore ripe for decision.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

In December 2005 a federal jury in Rockford, Illinois found Hawkins guilty of armed robbery affecting interstate commerce in violation of 18 U.S.C. § 1951(a), using and carrying a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A), and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  The

Presentence Investigation Report (PSR) concluded that Hawkins had three or more prior convictions for "violent felonies":  a 1978 Alabama conviction for robbery, a 1977 Georgia conviction for armed robbery, and a 1977 Georgia conviction for aggravated assault. Hawkins thus qualified as an armed career criminal and faced a mandatory minimum sentence of 180 months' imprisonment for the § 922(g) conviction. 18 U.S.C. § 924(e).

In March 2006 the trial court adopted the PSR and sentenced Hawkins to two 240-month prison terms for the robbery and felon-in-possession counts.  *United States v. Hawkins*, No. 3:04-CR-50028-1 (N.D. Ill. 2004).  The trial court ordered those terms to be served concurrently with one another, followed by a consecutive 84-month prison term on the Section 924(c) count.  *Id.*  The resulting 324-month prison term fell at the midpoint of the applicable guidelines range.  The Seventh Circuit affirmed on direct appeal.  *United States v. Hawkins*, 499 F. 3d 703 (7th Cir. 2007).

Hawkins filed a motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, asserting 16 distinct claims of ineffective assistance of counsel.  The trial court denied that motion in August 2010 and the United States Court of Appeals for the Seventh Circuit denied a certificate of appealability in May 2011.  *United States v. Hawkins*, No. 3: 09-CV-50243 (N.D. Ill. 2009).

In August 2016 the Seventh Circuit granted Hawkins's motion to file a second or successive § 2255 motion to present his argument that the enhancement of his sentence under the ACCA was improper in light of the Supreme Court's then-recent decision in *Johnson v. United States*, 135 S. Ct. 2251 (2015).  Hawkins, represented by counsel, noted that *Johnson* rendered the ACCA's residual clause void and further argued that his prior convictions did not qualify as violent felonies under the ACCA's "elements" clause

in light of the Supreme Court's decisions in *Mathis v. United States*, 136 S. Ct. 2243 (2016) and *Descamps v. United States*, 570 U.S. 254 (2013). The trial court concluded that even under *Mathis*, Hawkins's prior offenses qualified as violent felonies under the elements clause. The Seventh Circuit declined to issue a certificate of appealability. *United States v. Hawkins*, No. 3: 16-CV-50227 (N.D. Ill. 2016).

## II.    ANALYSIS

In his present § 2241 petition, Hawkins again contends that none of his prior state offenses constitute "violent felonies" for purposes of the ACCA in light of *Mathis* and *Descamps*. (Docs. # 1 and 9). However, the Court must deny the petition because Hawkins's claims are not cognizable in a § 2241 petition and because they are without merit.

### A.    Hawkins's claims may not be pursued under § 2241.

Hawkins does not satisfy the threshold criteria to assert his claims in a habeas corpus petition under § 2241. The near-exclusive means to challenge a federal conviction or sentence is to file a motion in the court of conviction pursuant to 28 U.S.C. § 2255, not to file a § 2241 petition in a remote district. *Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 2003). In *Hill v. Masters*, 836 F.3d 591 (6th Cir. 2016), the Sixth Circuit described a very narrow exception to this overarching rule: a prisoner may challenge a federal sentence in a § 2241 petition only if (1) his sentence was imposed under a mandatory Sentencing Guidelines regime before the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005); (2) he was foreclosed from asserting the claim in a successive petition under § 2255; and (3) after his sentence became final, the Supreme Court issued a retroactively-applicable decision establishing that – as a matter of statutory

interpretation – a prior conviction used to enhance his or her federal sentence no longer qualified as a valid predicate offense. *Hill*, 836 F. 3d at 595, 599-600.

The Court does not doubt at this juncture that an ACCA mandatory minimum sentence of 180 months, if imposed under the pre-*Booker* mandatory guidelines, could "present[] an error sufficiently grave to be deemed a miscarriage of justice or a fundamental defect." See *Hill*, 836 F.3d at 595. But Hawkins was sentenced to 240 months' imprisonment under the advisory Sentencing Guidelines, well above § 924(e)'s 180-month mandatory minimum. It is therefore questionable whether Hawkins can even clear *Hill's* first hurdle. See *Arroyo v. Ormond*, No. 6: 17-CV-69-GFVT (E.D. Ky. 2017), *aff'd*, No. 17-5837 (6th Cir. April 6, 2018) ("Arroyo was sentenced in October 2006, after the Supreme Court's decision in *Booker* . . . . On this basis alone, Arroyo's claim does not fall within *Hill's* limited exception for bringing a § 2241 habeas petition to challenge a federal sentence."); *Contreras v. Ormond*, No. 6: 17-CV-329-GFVT (E.D. Ky.), *aff'd*, No. 18-5020 at p. 2-3 (6th Cir. Sept. 10, 2018).

Hawkins plainly fails to satisfy *Hill's* second requirement because he has already asserted his claims under *Mathis* and *Descamps* in prior § 2255 proceedings. It is well-established that the remedy available under § 2255 is not considered "inadequate and ineffective" as required to invoke the savings clause where the petitioner was permitted to assert his claims under § 2255 but the trial court denied relief. *Truss v. Davis*, 115 F. App'x 772, 773-74 (6th Cir. 2004). In 2016, Hawkins filed a § 2255 motion asserting that his prior offenses could not qualify as valid predicates under the residual clause in light of *Johnson* or under the elements clause in light of *Mathis* and *Descamps*. *United States v. Hawkins*, No. 3: 09-CV-50243 (N.D. Ill. 2009). Hawkins cited the same legal authority

he presents here, but the trial court rejected his arguments on the merits and concluded that his Georgia and Alabama convictions were for "violent felonies" under the elements clause. *Id.* Because no "structural problem in § 2255 foreclose[d] even one round of effective collateral review" of Hawkins's claims, he may not attempt to relitigate the same claims simply by asserting them again in a § 2241 petition. *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002); *Copeland v. Hemingway*, 36 F. App'x 793, 795 (6th Cir. 2002).

Hawkins also does not satisfy the third requirement of *Hill*. Although he cites to the Supreme Court's decisions in *Mathis* and *Descamps* in support of his claims, his arguments do not actually rest upon them. Both of those decisions explain or clarify application of the "categorical" or "modified categorical" approaches used to determine whether a prior criminal conviction is for a "violent felony" under 18 U.S.C. § 924(e)(2)(B). But Hawkins does not contend that the trial court actually committed an error of a kind revealed by *Mathis*: he does not allege that it incorrectly determined that his prior offenses were committed under divisible statutes or improperly consulted *Shepard* materials to decide whether his prior convictions were for violent felonies. (Doc. # 1 at 10; Doc. # 9 at 42, 45). Hawkins has therefore failed to establish that his claims are actually grounded upon *Mathis*. *Accord Potter v. United States*, 887 F.3d 785, 787-88 (6th Cir. 2018) (requiring § 2255 petitioner purportedly asserting a claim under *Johnson* (2015) to establish that trial court actually applied the since-invalidated residual clause when it imposed sentence). Instead, Hawkins argues only that the state statutes under which he was convicted proscribe a broader range of conduct than the generic offense. *See* (Doc. # 1 at 11-14; Doc. # 9 at 42-45, 46-50). This is an argument under *Taylor v. United States*, 495 U.S. 575 (1990), not *Mathis*. It is an argument he could—and therefore must—have

made before the trial court at the sentencing hearing, on direct appeal, or in an initial motion under § 2255. It is not one Hawkins may now assert in a habeas corpus petition under § 2241. *Hill*, 836 F. 3d at 599-600.

**B.    Hawkins's claims are without merit.**

In any event, Hawkins's arguments are without merit: his three convictions – one each for robbery, armed robbery, and aggravated assault – are for violent felonies. For a prior offense to qualify as a "violent felony," the scope of the conduct proscribed by the statute of conviction must "correspond in substance" to the "generic, contemporary meaning" of the offense. *Taylor*, 495 U.S. at 598-99. To establish the conduct criminalized by the generic version of the offense, a court reviews the criminal codes of the many States, learned treatises, and the Model Penal Code – all as they stood when the ACCA was passed in 1986 – to ascertain a prevailing definition. *Id*. at 598; *United States v. Stitt*, 139 S. Ct. 364, 405-06 (2018). To establish the offense conduct for its comparate – the statute of conviction – courts use the "categorical approach" by "looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Taylor*, 495 U.S. at 600.

In the years since its adoption of this baseline comparative approach, the Supreme Court has clarified and refined the appropriate analysis to address particular situations. *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013). To begin with, while *Taylor* directs a court to focus on the elements of the offense as written in the statute of conviction, the meaning of the statutory terms defining those elements is governed by decisions of courts within the enacting jurisdiction. *Johnson v. Fankell*, 520 U.S. 911, 916 (1997); *United States v. Rede-Mendez*, 680 F. 3d 552, 555-56 (6th Cir. 2012) ("we are bound by a state

court's interpretation of state criminal law, including the elements of a crime ...").  A federal court is not permitted to conjure up a hypothetical scenario – based only upon the statutory text but untethered to controlling state precedent – to conclude that a state statute might be overbroad. As the Supreme Court explained:

> [T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language.  It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.  To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case.  But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

*Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007); *Moncrieffe*, 569 U.S. at 191; *United States v. Southers*, 866 F.3d 364, 368 (6th Cir. 2017).

In addition, where the defendant was convicted under a statute that defines only one crime – an "indivisible" statute – the sentencing judge must use the categorical approach, looking only to the statutory elements to determine if that offense is a "violent felony." *Descamps*, 570 U.S. at 258.  But a "divisible statute, [which lists] potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." *Id*. at 260.  Under such circumstances, where the alternative statutory elements result in the definition of several distinct crimes, the sentencing judge will have to look at underlying trial documents just to determine which crime the defendant was convicted of committing (and thereby discern the elements of the offense) before determining whether that offense is a "violent felony." *Descamps*, 570 U.S. at 261; *Nijhawan v. Holder*, 557 U.S. 29, 35 (2009).  In those cases, the court can review the underlying indictment or information, plea agreement or plea colloquy, jury instructions,

verdict forms, or similar judicial records, but only to establish the elements of offense of conviction. *Chambers v. United States*, 555 U.S. 122, 126 (2009); *Shepard v. United States*, 544 U.S. 13, 26 (2005). Of course, a statute is "divisible" only if it establishes several different crimes by defining alternative elements; a statute which merely sets forth different ways to commit a single crime is not divisible, and consideration of *Shepard* materials is not permitted. *Mathis*, 136 S. Ct. at 2248-50 (citing *Richardson v. United States*, 526 U.S. 813, 817 (1999)).

Finally, the categorical approach was created to compare a prior offense against one of the four offenses enumerated in § 924(e)(2)(B)(ii): burglary, arson, extortion, or the use of explosives. In enumerated-offense cases, the question analyzed is whether there is a match with respect to the *scope* of conduct proscribed by the several elements defining the generic offense and those found in the specific statute. *Taylor*, 495 U.S. at 586-92. But what of offenses that may qualify as valid predicates under § 924(e)(2)(B)(i) because they have as "an element the use, attempted use, or threatened use of physical force against the person of another"? In use-of-force cases, there is only one element – the element of force – that must be compared. In those cases, the question is not one of scope but one of *degree*: courts must compare the amount of "physical force" required by the elements clause itself (the "generic" amount of force, if you will) against the amount of force required by the state statute to permit a conviction. As for the former, "the phrase 'physical force' means violent force – that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). The physical force need only have the *potential* to inflict pain; it need not be probable or even likely to do so. *Stokeling v. United States*, 139 S. Ct. 544, 554 (2019). As for the latter,

the amount of force required by the statute of conviction is determined with reference to "the least of th[e] acts" criminalized as determined by state courts in that jurisdiction. *Johnson*, 559 U.S. at 136.

With these principles in mind, the Court analyzes Hawkins's prior offenses under Section 841(e)(2)(B). The Supreme Court's decision in *Johnson* rendered the residual clause found in Section 841(e)(2)(B)(ii) invalid, but "[did] not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." *Johnson*, 135 S. Ct. at 2563. Hawkins's prior convictions were not for any of the four enumerated offenses (burglary, arson, extortion, or the use of explosives) found in § 841(e)(2)(B)(ii). But his convictions can qualify as valid predicate offenses pursuant to the "elements" clause. Under that provision, an offense is a "violent felony" if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." 21 U.S.C. § 841(e)(2)(B)(i). Ample precedent supports the unexceptional conclusion that Hawkins's convictions for robbery, armed robbery, and aggravated assault involved precisely the kind of actual or threatened use of physical force that constitute a violent felony. *Cf. Stokeling*, 139 S. Ct. at 551 ("[I]t would be anomalous to read 'force' as excluding the quintessential ACCA-predicate crime of robbery").

### 1. *Robbery*

In July 1978 Hawkins pleaded guilty to robbery in Montgomery, Alabama and was sentenced to 30 years' imprisonment to run concurrently with sentences previously imposed in Georgia. (Doc. #13-3 at 94-95). Prior to 1980 robbery in Alabama was not

defined by statute at all; instead, it remained a common law offense.[1]  Georgia defined robbery as "the felonious taking of goods or money from the person of another, or in his presence, against his will by violence or by putting him in fear, and such violence must precede or accompany the stealing."  *Hatchet v. State*, 335 So. 2d 415, 418 (Ala. Crim. App. 1976).

The substantive question is whether the "violence" or "putting in fear" required by Alabama common law robbery necessarily involves the kind of physical force required by § 924(e)(2)(B)(i).  The force at issue, whether actually inflicted or merely threatened, must be capable of causing physical pain or injury.  *Johnson*, 559 U.S. at 140.  That standard might sound demanding, but it isn't: while the "merest touch" is not sufficient, "a slap in the face, for example" is enough.  *Id*. at 143.  Since *Johnson* (2010) was decided, courts have struggled to reach concensus on whether certain offenses involve the necessary degree of force.[2]  To illustrate the schism: Hawkins cites a case where the Eighth Circuit recently held that a Missouri conviction for second-degree robbery is not a violent felony under the ACCA in light of a state court decision upholding a conviction where the

---

[1]    As discussed above, one of the first tasks in applying the categorical approach is to determine whether the statute of conviction defines one offense or many.  *Descamps*, 570 U.S. at 261-62.  Here there is no statutory definition, only a single offense defined by the common law of Alabama.  The offense (rather than the statute, in this case) therefore is not and cannot be divisible.  Hawkins does not suggest otherwise, nor does he allege that the trial court erred in this regard.  *Mathis*, therefore, has no work to do, and Hawkins makes no argument under that decision.  Instead he proceeds directly to the scope inquiry under *Taylor*.  (Doc. # 9 at 42-43).  The foregoing alone conclusively establishes that Hawkins's challenge to his robbery conviction is not cognizable under § 2241 as *Mathis* has no bearing whatsoever upon the determination of whether his robbery conviction is an ACCA predicate.  Hawkins's effort to masquerade his *Taylor* claim as one under *Mathis* is unavailing.

[2]    Predictably, the parties garner numerous decisions in support of their preferred outcome.  *Compare United States v. Gardner*, 823 F. 3d 793 (4th Cir. 2016) (holding that North Carolina robbery offense is not a violent felony in light of two state court decisions, one upholding a robbery conviction where the defendant pushed the victim's hands off the property to be stolen and another where the defendant shoved the victim into some shelves) *with United States v. Chagoya-Morales*, 859 F.3d 411, 421-22 (7th Cir. 2017) (holding that Illinois robbery is a violent felony where the statute required the use of force or the threat of it but state court decisions excluded situations involving *de minimis* force, such as "snatching a hat from the head or a cane or umbrella from the hand.").

defendant first bumped the victim and then yanked her purse away. *United States v. Bell*, 840 F. 3d 963 (8th Cir. 2016). But less than two years later the Eighth Circuit abrogated *Bell*, holding that "[a] blind-side bump, brief struggle, and yank – like the 'slap in the face' posited by *Johnson*[], involves a use of force that is capable of inflicting pain." *United States v. Swopes*, 886 F.3d 668, 671 (8th Cir. 2018) (*en banc*).

Decisions of the United States Supreme Court do not always settle such questions in their entirety, but a recent case resolves this one. In *Stokeling*, the Supreme Court considered whether a Florida robbery conviction qualified as a violent felony under the ACCA. *Stokeling*, 139 S. Ct. at 550-56. Florida's robbery statute, in terms similar to those defining Alabama's common law offense, criminalized "the taking of money or other property . . . when in the course of the taking there is the use of force, violence, assault, or putting in fear." *Id.* The Court concluded that the ACCA incorporated the common law definition of robbery, including its modest requirement that the force involved merely be "sufficient . . . to overcome the resistance encountered." *Id*. at 550-52. Florida law likewise required force "sufficient to overcome the resistance encountered" to obtain a robbery conviction, and thus such a conviction qualified as an ACCA predicate. *Id.* at 554-56.

Hawkins's robbery conviction in Alabama constitutes a violent felony in light of *Stokeling*. Decisions from the Alabama courts during the period when Hawkins was convicted in that state confirm that the force involved, whether used or merely threatened, had to be "actually sufficient to overcome the victim's resistance" to constitute robbery. *Casher v. State*, 469 So. 2d 679, 680 (Ala. Crim. App. 1985) (citing 77 C.J.S. Robbery § 15 (1952); *Thompson v. State*, 24 Ala.App. 300, 305, 134 So. 679 (1931)). The Court

has canvassed Alabama decisional law, and it consistently found or required more than a *de minimis* touch to sustain a robbery conviction. *Cf. Vickerstaff v. State*, 374 So.2d 443, 446 (Ala. Crim. App. 1979) ("It cannot be gainsaid that force or violence was employed in this case in perpetrating the robbery. One of the participants pushed or shoved the victim into the bushes and appellant admitted that while the victim was on the ground he robbed him of $26.00."). This is enough to satisfy *Stokeling*. See *Chaney v. United States*, 917 F. 3d 895, 900 (6th Cir. 2019) (holding that similarly-worded Michigan robbery statute is a violent felony under *Stokeling*); *United States v. Ash*, 917 F.3d 1238, 1243-45 (10th Cir. 2019) (holding that Missouri conviction for second-degree robbery is crime of violence under *Stokeling*); *Klikno v. United States*, 2019 WL 2559266 (7th Cir. June 21, 2019) (holding that Illinois convictions for robbery and armed robbery are crimes of violence under *Stokeling*).

### 2.    *Armed Robbery*

In April 1977 Hawkins was convicted of armed robbery in Valdosta, Georgia and was sentenced to 12 years' imprisonment. (Doc. #13-2 at 93). In June 1976 when Hawkins committed the offense, Georgia law provided that:

> A person commits armed robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another by use of an offensive weapon. The offense of robbery by intimidation shall be a lesser included offense in the offense of armed robbery.

Ga. Code § 26-1902(a) (1976). The statute provided for punishments of 5-20 years' imprisonment, life imprisonment, or death, but with a 10-year minimum sentence if the

indictment charges and the defendant is found to have intentionally used an offensive weapon to inflict serious bodily injury on a person.[3]

Because the statute sets out different punishments depending on the underlying conduct, the statute is divisible. *Mathis*, 136 S. Ct. at 2256 ("If statutory alternatives carry different punishments, then under *Apprendi* they must be elements."). The Court may therefore reference *Shepard* materials such as the indictment to determine the elements of the offense committed by Hawkins. *Chambers*, 555 U.S. at 126. The September 1976 indictment charged Hawkins with armed robbery for taking cash from two victims "by use of Two (2) pistols, same being offensive weapons." (Doc. #13-2 at 91-92). Because the indictment did not charge Hawkins with inflicting serious bodily injury upon a person, he was indicted and convicted of "simple" armed robbery without the aggravating factor.

As the Supreme Court recently noted, "it would be anomalous to read 'force' as excluding the quintessential ACCA-predicate crime of robbery" *Stokeling*, 139 S. Ct. at 551. As with nearly all armed robbery statutes, the cornerstone of the Georgia offense is the perpetrator's use of a weapon to instill fear in the victim that physical harm will be visited upon him or her unless the desired property is surrendered:

> A taking accomplished by force or intimidation is the "distinguishing characteristic" of robbery – the "gist" of the offense. The force necessary for robbery is actual violence or intimidation "exerted upon the person robbed, by operating upon his fears – the fear of injury to his person, or property, or character." Intimidation is that "terror . . . likely to create an apprehension of danger, and induce a person to part with his property for the safety of his person.

---

[3]     See https://tinyurl.com/y39vrdw6 (last visited on June 21, 2019). The present version of the statute is found at O.C.G.A. § 16-8-41(a) and defines the offense in identical terms.

*State v. Epps*, 476 S.E.2d 579, 580 (Ga. 1996) (citations omitted). Because armed robbery in Georgia requires at least the "threatened use of physical force" against the victim as required by § 924(e)(2)(B)(i), courts have consistently held that a conviction for this offense qualifies as a violent felony under the ACCA. *Cf. United States v. Wade*, 551 F. App'x 546, 548-49 (11th Cir. 2014); *Self v. United States*, No. 1:16-CV-220-MR, 2017 WL 5140528, at *2-5 (W.D.N.C. Nov. 4, 2017); *Jackson v. United States*, No. 3:16-CV-101-TCB, 2017 WL 9617005, at *2-3 (N.D. Ga. Oct. 16, 2017); *Walker v. United States*, No. CV316-052, 2017 WL 957369, at *7 (S.D. Ga. Mar. 10, 2017) (citing *Sheely v. State*, 650 S. E. 2d 762, 764 (Ga. App. 2007) and *Hicks v. State*, 207 S. E. 2d 30, 37 (Ga. 1974)); *Green v. United States*, No. CV416-153, 2017 WL 819680, at *2 (S.D. Ga. Mar. 1, 2017), *report and recommendation adopted in pertinent part*, 2017 WL 2692409 (S.D. Ga. June 22, 2017). Convictions under similarly-worded armed robbery statutes in other jurisdictions have likewise been held to qualify as ACCA predicates. See *United States v. Nigg*, 667 F.3d 929, 937-38 (7th Cir. 2012) (collecting cases); *United States v. Mitchell*, 743 F.3d 1054, 1058-9 (6th Cir. 2014) (holding Tennessee robbery is a violent felony under the elements clause). Hawkins's armed robbery conviction from Georgia therefore qualifies as an ACCA predicate offense.

### 3. *Aggravated Assault*

In January 1977 Hawkins pleaded guilty to aggravated assault in Georgia and was sentenced to 6 years' imprisonment. (Doc. #13-1 at 90). To commit an aggravated assault in Georgia, the defendant must commit a simple assault accompanied by an aggravating factor. When Hawkins committed his crime in July 1976, *see id.* at 86, the assault statute provided that:

> A person commits simple assault when he either (a) attempts to commit a violent injury to the person of another or (b) commits an act which places another in reasonable apprehension of immediately receiving a violent injury. A person convicted of simple assault shall be punished as for a misdemeanor.

Ga. Code § 26-1301 (1968).[4] The aggravating factors are defined in the statutory section immediately following:

> A person commits aggravated assault when he assaults (a) with intent to murder, to rape, or to rob, or (b) with a deadly weapon. A person convicted of aggravated assault shall be punished by imprisonment for not less than one nor more than 10 years. A person who knowingly commits aggravated assault upon a peace officer while such peace officer is engaged in or on account of the performance of his official duties shall upon conviction be punished by imprisonment for not less than five nor more than 20 years.

Ga. Code § 26-1302 (1976).[5] The statute is divisible under *Mathis* because it establishes two different punishments for two different offenses, the latter being an aggravated assault committed upon a peace officer. Because Georgia's aggravated assault statute is divisible, the Court may refer to *Shepard* materials for the purpose of determining what species of aggravated assault Hawkins committed. *Chambers*, 555 U.S. at 126. The May 1976 indictment issued in Brunswick, Georgia charged Hawkins with aggravated assault for assaulting his victim "with a certain knife, same being a deadly weapon." (Doc. # 13-1 at 86). Hawkins's aggravated assault therefore involved his use of a deadly weapon.

---

[4] See https://tinyurl.com/y4fsylum (last visited on June 21, 2019). The present version of the statute, O.C.G.A. § 16-5-20(a), is structured differently, but defines the underlying offense conduct in functionally similar terms.

[5] See https://tinyurl.com/yxrxbu3z (last visited on June 21, 2019). The present version of the statute, O.C.G.A. § 16-5-21(a)(1),(2), is structured differently, but defines the underlying offense conduct in functionally similar terms.

Because it involves the actual or threatened use of physical force, a Georgia conviction for aggravated assault has consistently been found to constitute a violent felony or crime of violence in numerous cases. *Cf. Walker v. United States*, No. CV316-052, 2017 WL 957369, at *8 (S.D. Ga. Mar. 10, 2017) (elements clause in § 924(e)(2)(B)(i)) (collecting cases); *United States v. Torres-Jaime*, 821 F. 3d 577, 580-85 (5th Cir. 2016) (enumerated offense under U.S.S.G. § 2L1.2(b)(1)(a)(ii)) (collecting cases): *United States v. Smith*, 417 F. App'x 911, 917 (11th Cir. 2011) (elements clause of U.S.S.G. § 2B1.2(a)(1)); *Merritt v. United States*, No. CV408-193, 2011 WL 221864, at *2 (S.D. Ga. Jan. 20, 2011) (same); *Green v. United States*, No. CV408-193, 2009 WL 6496558, at *6 n.11 (S.D. Ga. Sept. 23, 2009) (same).

Against the weight of this authority Hawkins points to two unpublished district court decisions that have concluded that a Georgia conviction for aggravated assault is not a crime of violence because Georgia courts have construed the simple assault statute as requiring only a general, rather than specific, intent. *Williams v. United States*, No. 6:16-CV-6410(MAT), 2016 WL 5078381, at *4 (W.D.N.Y. Sept. 20, 2016); *United States v. Carmona-Garcia*, No. 2:16-CR-318-RB, 2016 WL 10538768, (D.N.M. Apr. 26, 2016). As a general intent crime, simple assault in Georgia requires the defendant to intend the underlying act which causes the victim's apprehension, but it does not require the defendant to specifically intend the resulting apprehension. *Stobbart v. State*, 533 S.E.2d 379, 381 (Ga. 2000). In other words, it requires the defendant to intend the cause, but not the effect. See *Kirkland v. State*, 638 S.E.2d 784, 786 (Ga. 2006) ("[t]he crime of aggravated assault . . . is established by the reasonable apprehension of harm by the victim of an assault . . . rather than the assailant's intent to injure."). Invoking the Supreme

Court's statement in *Leocal v. Ashcroft*, 543 U.S. 1 (2004) that the elements clause "naturally suggests a higher degree of intent than negligent or merely accidental conduct[,]" these courts held that the general intent required by Georgia law is insufficient to qualify the offense as an ACCA predicate under the elements clause. After the briefing in the present case closed, the Eleventh Circuit adopted this view and concluded that a Georgia conviction for aggravated assault does not satisfy the elements clause. Relying upon Eleventh Circuit precedent, the panel concluded that Georgia's statute does not qualify because it does not require volitional conduct, and instead "can be predicated upon a mens rea of recklessness." *United States v. Moss*, 920 F. 3d 752, 758-59 (11th Cir. 2019).[6]

But this reasoning is unpersuasive for several reasons. First, these cases invoke *Leocal* to interpret statutes involving the actual, attempted, or threatened use of force. But *Leocal* itself made clear that it addressed only the actual use of force. *Leocal*, 543 U.S. at 8-9 ("[w]e do not deal here with an attempted or threatened use of force."). Because the attempted or threatened use of force is at the heart of the Georgia assault statute being interpreted, reliance upon *Leocal* is misplaced. Second, it ignores the *mens rea* requirement applicable to aggravated assault by focusing exclusively upon simple assault, thus improperly divorcing the assault from the aggravated context in which it is committed. In *Guyse v. State*, 690 S. E. 2d 406 (Ga. 2010), the Supreme Court of Georgia held that an aggravated assault conviction requires proof "that the defendant possessed a 'general intent to injure' with the weapon." The State must prove that the defendant

---

[6]    Several months after briefing in this matter had closed, Hawkins filed a motion to amend his petition to include new argument based upon *Moss*. (Doc. # 17). The Court has considered his arguments, but neither an amendment to the petition nor re-briefing is required, and the motion will therefore be denied as unnecessary.

assaulted his victim with an object which was likely to or actually did result in serious bodily injury. Thus, under Georgia law when a perpetrator commits an assault by placing the victim in fear of violent injury, it is the aggravating factors set forth in § 16-5-21(a) – such as the intent to murder, the intent to rape, or the intent to rob – which provide the necessary intent. *Id*. at 409. *See Beeman v. United States*, No. 4:08-cr-38, 2016 WL 10571891, at \*5-6 (N.D Ga. Oct. 12, 2016) (noting that while simple assault by apprehension is a general intent crime under *Guyse*, even aggravated assault by "putting in fear" involves the threatened use of force because all of the circumstances set forth in the aggravated assault statute "necessarily require an intent to threaten or use force that is capable of causing injury"), *aff'd*, 871 F. 3d 1215 (11th Cir. 2017); see also *United States v. Perez-Silvan*, 861 F.3d 935, 942-43 (9th Cir. 2017).

More importantly, *Moss* failed to acknowledge or address the Supreme Court's decision in *Voisine v. United States*, ___ U.S. ___, 136 S. Ct. 2272 (2016), which undermines its holding. Federal law prohibits certain persons from possessing firearms, including convicted felons (18 U.S.C. § 922(g)(1)) and those convicted of "misdemeanor crimes of domestic violence" (18 U.S.C. § 921(g)(9)). For the latter group, qualifying offenses include any misdemeanor that "has, as an element, the use or attempted use of physical force" committed by a person with a specified domestic relationship with the victim. 18 U.S.C. § 921(33)(A). That definition is nearly identical to the elements clause found in the ACCA. While some circuits had previously held that convictions for reckless, rather than intentional, assault could not qualify as predicate offenses, the Supreme Court rejected that conclusion. *Id*. at 2278 (holding that "[r]eckless assaults, no less than the

knowing or intentional ones . . . satisfy th[e] definition" of "crimes that necessarily involve the 'use . . . of physical force.'"). As the Supreme Court explained:

> [T]he word "use" does not demand that the person applying force have the purpose or practical certainty that it will cause harm, as compared with the understanding that it is substantially likely to do so. Or, otherwise said, that word is indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness with respect to the harmful consequences of his volitional conduct.

*Id*. at 2279.

The Sixth Circuit has joined several other circuits in holding that in light of the Supreme Court's decision in *Voisine*, offenses which require no more than recklessness as a mens rea can qualify as violent felonies or crimes of violence. *United States v. Verwiebe*, 874 F. 3d 258, 261-62 (6th Cir. 2017) ("A defendant uses physical force whenever his volitional act sets into motion a series of events that results in the application of a 'force capable of causing physical pain or injury to another person.' . . [under *Voisine*], the 'use of physical force' requires volitional but not intentional or knowing conduct."). *See also United States v. Harper*, 875 F.3d 329, 330 (6th Cir. 2017) (applying *Verwiebe* to hold that reckless aggravated assault in Tennessee is a crime of violence under § 4B1.2(a)); *Davis v. United States*, 900 F. 3d 733 (6th Cir. 2018) (same under ACCA's use of force clause).

This approach represents the majority view. *See United States v. Pam*, 867 F. 3d 1191, 1207-08 (10th Cir. 2017) (recognizing that *Voisine* effectively abrogated prior circuit precedent which relied upon *Leocal* to conclude that recklessness was an insufficient mens rea to constitute a violent felony under the ACCA); *United States v. Fogg*, 836 F.3d 951, 956 (8th Cir. 2016) (recognizing that reckless conduct can satisfy the "use" requirement of the ACCA's elements clause); *United States v. Bettcher*, 911 F. 3d 1040,

1044-45 (10th Cir. 2018) (Utah aggravated assault conviction based upon reckless conduct constituted crime of violence under § 4B1.2(a)(1)'s elements clause); *United States v. Reyes-Contreras*, 910 F. 3d 169, 183-84 (5th Cir. 2018); *United States v. Howell*, 838 F.3d 489, 500–01 (5th Cir. 2016) (U.S.S.G. § 4B1.2(a)).  See also *Torres-Jaime*, 821 F. 3d at 581-85 (rejecting mens rea argument regarding Georgia aggravated assault without reference to *Voisine*).  *Contra United States v. Orona*, 923 F. 32d 1197, 1202-03 (9th Cir. 2019) (adopting contrary view but acknowledging its minority position); *United States v. Rose*, 896 F.3d 104, 109-10 (1st Cir. 2018).  Because the Sixth Circuit's majority position in *Verwiebe* governs this Court's disposition of Hawkins's claims (and because that position is correct in light of *Voisine*), the Court concludes that the mens rea requirement set forth in *Kirkland* and *Guyse* is sufficient to satisfy § 924(e)(2)(B)(i)'s "use" requirement, and his conviction for aggravated assault constitutes a violent felony under the ACCA's elements clause.

## III.    CONCLUSION

Having thus concluded that Hawkins's claims are not properly before the Court in this § 2241 proceeding and that each of his prior offenses involved the actual or threatened use of physical force as required by § 924(e)(2)(B)(ii), his petition must be denied.

Accordingly, **IT IS ORDERED** as follows:

(1)    Robert Hawkins's original and supplemental petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Docs. # 1 and 9) are **DENIED**;

(2)    Hawkins's motion to amend his petition (Doc. # 17) is **DENIED**; and

(3)    This action is **DISMISSED** and **STRICKEN** from the Court's docket.

This 8th day of July, 2019.



Signed By:

*David L. Bunning*

United States District Judge

K:\DATA\ORDERS\ProSe\Hawkins 18-115-DLB Memorandum RBW.docx